IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NICHOLAS BAKER,<br><br>      Petitioner,<br><br>   vs.<br><br>MARTIN BITER, Warden, Kern Valley State Prison,[1]<br><br>      Respondent. | No. 2:13-cv-01290-JKS<br><br>MEMORANDUM DECISION |

Nicholas Baker, a state prisoner proceeding *pro se*, filed a Petition for Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Baker is in the custody of the California Department of Corrections and Rehabilitation and incarcerated at Kern Valley State Prison. Respondent has answered, and Baker has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On direct appeal of Baker's conviction, the California Court of Appeal recounted the following facts underlying this case:

> Apparently upset over the breakup of his father's marriage, [Baker] confronted his stepmother's brother, Scott Thurston, whom he blamed for the breakup. Thurston told police at the scene that [Baker] put a gun to his head and threatened to kill him.
> Charged with assault with a semiautomatic firearm, attempted criminal threats, and possession of a firearm by a felon, [Baker] changed his not guilty plea on the eve of trial to a no contest plea to the first charge in exchange for dismissal of the other two charges. He also admitted a prior strike conviction.

---

[1] Martin Biter, Warden, Kern Valley State Prison, is substituted for the People of the State of California. FED. R. CIV. P. 25(c); Rule 2(a), Rules Governing Section 2254 Cases in the United States District Courts; *Stanley v. Cal. Supreme Court*, 21 F.3d 359, 360 (9th Cir. 1994).

**Attempts to Relieve Counsel**

[Baker] first expressed a desire to relieve his retained counsel, Grady Davis, three days before entering his no contest plea. The court asked [Baker] to "briefly indicate the reasons why" he wished to relieve counsel, and [Baker] responded (among other things) that counsel had failed to confer with him and failed to perform critical investigation.

The prosecutor also criticized defense counsel's "mishandling" of the defense and concurred with [Baker's] assertion that counsel "does not appear to be competent," "had not sought an investigator," and "appeared to be unaware [of] how much time his client was facing or what offenses qualified as a serious violence [*sic*] offense."

After attorney Davis responded that he was "fully prepared to go to trial" and had interviewed all the witnesses, [Baker] announced, "I'm going to keep him now. I've changed my mind."

But soon after entering his no contest plea, [Baker] sought to withdraw his plea, again asserting that attorney Davis had provided inadequate representation. During what the court described as "a *Marsden*-type hearing,"[2] [Baker] complained Davis told him prior to the plea that he would "probably" receive only a 10-year sentence and that Davis failed to engage an investigator, leaving [Baker's] wife to conduct an investigation.

FN2. *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).

[Baker] also told the court he wanted to "pull [his] plea" because he learned the victim had told attorney Davis "there was no injury" and, in any event, [Baker's] father had confessed to the crime.

Attorney Davis disputed these assertions, and the court declined to relieve him. The court did, however, appoint attorney Robert Radcliffe, "to look into any grounds for withdrawing the plea."

**[Baker's] First Motion to Withdraw His Plea**

Attorney Radcliffe filed a motion on behalf of [Baker] to withdraw his plea, on the following grounds: (1) [he] was "under duress" when he entered the no contest plea, rendering it involuntary; (2) [he] was misinformed by attorney Davis about the impact of his plea; and (3) attorney Davis had failed to properly investigate the case or prepare an adequate defense.

The court denied [Baker's] motion and sentenced [him] to 18 years in state prison.

Following the denial of his motion to withdraw the plea, [Baker] appealed, arguing that the trial court erred in denying his request to discharge attorney Davis and erred thereafter in denying his motion to withdraw the plea. We agreed with [Baker's] first contention and remanded the matter with directions that (among other possibilities) the trial court allow [Baker] to employ the retained counsel of his choice, or to apply for the appointment of counsel upon an adequate showing of indigence. If newly retained or

2

appointed counsel determined there was a basis for moving to withdraw [Baker's] plea, the court should consider and decide that motion.  (*Baker*, *supra*, C059266).)

**The Instant Motion to Withdraw the Plea**

After remand, [Baker's] new counsel brought a second motion to withdraw his plea, arguing that it had not been knowing, intelligent, and voluntary. "[D]espite what [Baker] said in open court and on the record about keeping Mr. Davis as his attorney, [he] was still concerned whether or not Mr. Davis was prepared to go to jury trial."  The plea offer made on the day of trial put "pressure" on [Baker] "to hurry up and make up his mind" and did not create a situation favoring "thoughtful reflection; i.e., a knowing, intelligent and voluntary plea."  When [Baker] expressed reluctance, attorney Davis "provided [him] with a note from [his] father and [his] wife urging him to accept the plea bargain," and [Baker] ultimately "caved in under the pressure and accepted the plea bargain."

[Baker] also claimed to have learned from "informal investigation post-plea" that both the victim and [Baker's] father might have testified at trial differently than their reports to officers at the scene, and an additional witness might have been discovered.  In sum, he argued, "there was inadequate pre-plea/trial investigation and that was also a factor that caused [him] to accept the plea bargain."  The People opposed the motion, and the trial court conducted a hearing.

At the hearing, [Baker] testified he originally attempted to relieve attorney Davis because he "didn't investigate [the] case at all.  He was telling me that there was no deal, that you're looking at 41 years in prison . . . he didn't ask what even happened."  But they spoke and Davis "reassured" [Baker] and also agreed to allow Davis's (former) wife (also an attorney) to assist him, so [Baker] decided to keep him.  The night before trial, [Baker] and Davis discussed trial tactics, including [Baker's] anticipated testimony.  Davis told [Baker] there was no plea offer, and that he faced a possible 44-year sentence if found guilty.

On the day of trial, according to [Baker], Davis "pushed an 18-year plea bargain in [Baker's] face" and said, "you need to take this."  They discussed whether his actual sentence might be less than 18 years.  When [Baker] asked Davis if he was "ready to go to trial[,]" Davis responded, "I don't want to go to trial.  You're guilty of something."  [Baker] was reluctant to take the plea bargain, but he did because he did not feel like he had any other options.

Thurston testified (contrary to his reports to police) that [Baker] never actually pointed the pistol at him; rather, Thurston said he grabbed the gun as [Baker] held it, put the barrel to his head, and said, "Shoot me, shoot me."  Thurston reported he had been diagnosed "bipolar, schizophrenic, PTSD," but on the day of the crime, he had not taken his prescribed medication; when he fails to take his medication, he "can't function right," and his ability "to tell what's real" and to remember are affected.  Thurston also testified he met with attorney Davis and gave him a written statement declaring [Baker] innocent, asking that the charges be dropped, and explaining his mental health issues.

3

> [Baker's] father testified he saw [Baker] point the gun in Thurston's direction and wave it back and forth; a moment later, he saw "the gun was against [Thurston's] head, but [Thurston] had a hold of it" and Thurston was saying, "Do it, do it." He admitted having previously told police that [Baker] "put the gun to [Thurston's] head" and may also have told the officer [Baker] threatened to kill Thurston. [Baker's] father reported he met with attorney Davis three times; [Baker's] fiancée Kelly was present for all three meetings and Thurston was present during two, at which they discussed what had happened. On the date of the plea bargain, Davis told [Baker's] father he felt the evidence against [Baker] was strong, and [Baker's] father advised him to "take the deal" because he was worried about the possible maximum sentence, wanted [Baker] "not to put the family through this," and "was hoping [Baker] would" be influenced by that advice.
>
> [Baker's] fiancée Kelly testified she hired attorney Davis. She also "rounded . . . up" Thurston and [Baker's] father and brought them to Davis's office for what she described as a single meeting with him, during which there "wasn't much questioning. It was basically play[ing] the [audio tapes of statements given to police] and he looked at a couple of papers and that was [it], and said he'd be back in contact with us, or with them." Kelly also testified she was contacted by a woman named Melanie Woodbury, who gave Kelly a written statement of what she witnessed of the incident.³ Kelly passed the statement along to Davis, but he never contacted Woodbury.
>
>> FN3. Woodbury's statement describes [Baker's] argument with "another man," a portion of which occurred inside a trailer; it does not mention a gun.
>
> Ruling from the bench, the court stated it was "familiar with this case now for two years" and recalled it had taken "a very careful plea," and "[a]t no time . . . did [Baker] express any dissatisfaction with Mr. Davis whatsoever." The court found "totally unbelievable" Thurston's story that [Baker] was only waving the gun around and Thurston pulled it to his own forehead. "I am going to find that the plea was entered into freely and voluntarily[;] . . . I have no evidence at all . . . no convincing evidence, certainly no clear and convincing evidence—that Mr. Davis was incompetent in preparing for the trial. [¶] [Baker's] father himself told me that he met with Mr. Davis three times, that Kelly was present all of those times, Mr. Thurston was present at least twice. He talked to everyone. This is not coming from Mr. Davis, this is coming from your side . . . . [¶] So, I am going to deny the motion to set aside the plea."

*People v. Baker*, No. C064731, 2011 WL 3107071, *1-3 (Cal. Ct. App. Jul. 26, 2011).

Through counsel, Baker appealed to the California Court of Appeal the trial court's denial on remand of his motion to withdraw the plea, arguing that the trial court failed to apply the correct legal standard in assessing whether Baker should be permitted to withdraw his plea

4

due to the ineffective assistance of counsel. According to Baker, the trial court failed to apply the two-prong test for ineffective assistance of counsel set forth in *Strickland v. Washington*, 466 U.S. 688 (1984), because it "acknowledged there was evidence that trial counsel was incompetent but at the same time appeared to decide trial counsel performed competently merely because counsel met with witnesses." The appellate court rejected that claim in an unpublished, reasoned opinion, concluding that the trial court was not required to recite on record that it had applied the *Strickland* test and that it did not abuse its discretion in concluding that Baker failed to establish ineffective assistance and good cause to withdraw his plea. *Baker*, 2011 WL 3107071, at *5-6. Again proceeding through counsel, Baker sought review from the California Supreme Court, which was summarily denied on October 26, 2011.

Baker then filed a *pro se* for a writ of habeas corpus in the Superior Court, asserting a litany of complaints surrounding his counsel's performance. The Superior Court denied the petition on the ground that it asserted claims that had been raised and rejected on direct appeal. Baker then filed a *pro se* petition for a writ of habeas corpus in the California Court of Appeal, arguing that: 1) his counsel was ineffective for failing to conduct a reasonable pretrial investigation; 2) he was coerced into accepting the plea deal due to the ineffective assistance of his counsel; 3) his counsel had an actual conflict of interest because he "argued against [Baker] withdrawing his plea"; and 4) the trial judge was biased against him. The Court of Appeal summarily denied the petition. Baker raised the same claims to the California Supreme Court in another *pro se* petition for a writ of habeas corpus, which was denied without comment on January 30, 2013. Baker timely filed a Petition for a Writ of Habeas Corpus to this Court on June 3, 2013.

## II. GROUNDS/CLAIMS

In his *pro se* Petition before this Court, Baker raises six largely-overlapping grounds for relief.  First, Baker appears to raise the claim he brought on his initial direct appeal of his conviction—that the trial court erred in not allowing Davis, Baker's retained counsel, to withdraw from the case.  Baker next contends that the trial court failed to apply the proper standard in determining whether Baker could withdraw his no contest plea based on the ineffective assistance of counsel.  Baker similarly alleges in claim 3 that Davis was ineffective for failing to hire an investigator and to conduct an adequate pre-trial investigation.  In claim 4, Baker asserts that Davis had a conflict of interest because he stated that he was not retained to handle a plea withdrawal and was reluctant to handle it.  Baker likewise argues in claim 5 that his "guilty plea . . . was the product of ineffective counsel."  Finally, Baker alleges that the "trial court's remarks during the multiple hearings in this matter reveal a preconcieved [sic] and demonstrated aversion to [his] motion to withdraw [his] plea."

## III.  STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that

are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision." *Id.* at 412. The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds, not on the supervisory power of the Supreme Court over federal courts. *Early v. Packer*, 537 U.S. 3, 10 (2002). Where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002). Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *See Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004) (citing *Avila v. Galaza*, 297 F.3d 911, 918 (9th Cir. 2002)). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). *Stanley v. Cullen*, 633 F.3d 852, 860 (9th Cir. 2011); *Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." *Himes*, 336 F.3d at 853. Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).

## IV. DISCUSSION

<u>Discharge of Attorney (Claim 1)</u>

Although not entirely clear, it appears that Baker's first ground for relief focuses on the trial court's failure to allow Baker to discharge Davis as his retained counsel. However, this Court is "without power to decide questions that cannot affect the rights of litigants before [it]." *N. Carolina v. Rice*, 404 U.S. 244, 246 (1971) (per curiam) (citation omitted). Baker raised this claim on his initial appeal to the California Court of Appeal, and the appellate court set aside the

judgment and mandated that, on remand, Baker would be "permitted to proceed from the point, after entering his no contest plea, at which the court should have granted his request to relieve attorney Davis." *People v. Baker*, No. C059266, 2009 WL 2437697, at *3 (Cal. Ct. App. Aug. 11, 2009).  Because Baker has already been accorded relief on this claim, the issue is now moot, and this Court has no authority to grant relief on a moot claim.  *Rice*, 404 U.S. at 246.

<u>Withdrawal of Plea Due to Ineffective Assistance of Counsel (Claims 2, 3, 5)</u>

In his second, third, and fifth claims, Baker makes a number of assertions attacking his no contest plea and faulting Davis's representation in connection with its entry.  Because Baker pleaded no contest,[2] he is limited to challenging his plea by demonstrating that the advice he received from counsel did not constitute effective representation.  *Lambert v. Blodgett*, 393 F.3d 943, 979 (9th Cir. 2004); *see also Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985) ("Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases. . . .  A defendant who pleads guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [ineffective].'" (quoting *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)); *Ortberg v. Moody*, 961 F.2d 135, 137-38 (9th Cir. 1992) (applying *Tollett* to a no contest plea).  Thus, although he styles his claims as separate theories supporting habeas relief, they boil down to a single claim that his attorney rendered constitutionally-inadequate assistance which caused him to accept the plea bargain, and the trial

---

[2]     Pursuant to California law, a no contest to a felony charge is "considered the same as a plea of guilty" and has the same legal effect as a guilty plea "for all purposes."  CAL. PENAL CODE § 1016.

court erred in refusing to allow Baker to withdraw his no contest plea based on the ineffective assistance.

The Supreme Court has held that the two-part test set forth in *Strickland* applies to challenges to pleas based upon ineffective assistance of counsel. *Hill*, 474 U.S. at 57-59. Under that test, a federal habeas petitioner must establish two things: (1) that counsel's performance was deficient because it fell below an "objective standard of reasonableness" under prevailing professional norms; and (2) that petitioner was prejudiced by counsel's deficient performance, that is, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687-88, 694; *see also Hill*, 474 U.S. at 59 (prejudice requirement in plea context focuses on whether ineffective assistance affected outcome of plea process). An ineffective assistance of counsel claim should be denied if the petitioner fails to make a sufficient showing under either of the *Strickland* prongs. *See Strickland*, 466 U.S. at 697 (courts may consider either prong of the test first and need not address both prongs if the defendant fails on one).

"In the context of a guilty plea, the ineffectiveness inquiry probes whether the alleged ineffective assistance impinged on the defendant's ability to enter an intelligent, knowing and voluntary plea of guilty." *Lambert*, 393 F.3d at 979. Thus, where counsel misadvised a defendant about the law during a plea negotiation or improperly coerced a defendant to accept a plea bargain, counsel's performance may be found to have been deficient. *Cf. Lafler v. Cooper*, 132 S.Ct. 1376, 1384 (2012) (counsel's erroneous legal advice about possibility of conviction that led to rejection of plea offer constituted deficient performance). Because of the difficulty in evaluating counsel's performance, there is a "strong presumption that counsel's conduct falls

within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *see also Harrington*, 131 S. Ct. at 788 ("The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." (citing *Strickland*, 466 U.S. at 690)).

In this case, the California Court of Appeal rejected Baker's contention that the trial court failed to apply the *Strickland* test in concluding that Baker did not make the requisite showing of ineffective assistance of counsel, noting that there is no requirement that the trial court was required to recite on the record that it had applied the test when deciding his motion. *Baker*, 2011 WL 3107071, at *5. The appellate court further concluded that the trial court did not abuse its discretion in finding that Baker failed to establish by clear and convincing evidence ineffective assistance and good cause to withdraw his plea:

> [T]he evidence showed Davis's investigation included meeting with the percipient witnesses; [Baker's] father—a witness to the events—testified he met with attorney Davis three times, and that victim Thurston met with him twice. Davis questioned the men about their statements to police, received from Thurston a written statement explaining Thurston's mental health issues and his failure to take his medication on the day of the incident, and met again with Thurston at the courthouse. Davis also discussed with [Baker] trial tactics and [Baker's] anticipated testimony. The trial court did not abuse its discretion in concluding that this evidence did not establish that defense counsel's actions were outside the range of competence demanded of attorneys in criminal cases.
> [Baker's] argument that counsel's performance fell below prevailing professional norms is unpersuasive. He complains that his fiancée Kelly had "collected" statements of defense witnesses, but nothing about her actions shows that Davis was incompetent in not accepting her assistance. He also cites criticisms of defense counsel's performance by the prosecutor, but the prosecutor's opinion of counsel's performance does not constitute evidence.

*Id.* at *6 (internal citations and quotation marks omitted).

In reviewing ineffective assistance of counsel claims in a federal habeas proceeding:

11

> The question "is not whether a federal court believes the state court's determination" under the *Strickland* standard "was incorrect but whether that determination was unreasonable—a substantially higher threshold." And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard.

*Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citations omitted); *see also Runningeagle v. Ryan*, 686 F.3d 758, 775 (9th Cir. 2012).

Based upon the record before it, this Court cannot say that the decision of the appellate court on habeas review that Davis conducted a constitutionally-adequate investigation was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Because Baker fails to show defective performance as required by *Strickland*, he fails to establish ineffective assistance based on counsel's investigation that warranted withdrawal of his guilty plea.

Baker also alleges in his Petition that Davis refused to file two motions he requested: a motion to dismiss the information pursuant to California Penal Code § 995 and a *Pitchess* motion[3] for discovery of information in a law enforcement officer's personnel file. But Baker cannot demonstrate that either motion would have been successful. To prevail on a § 995

---

[3] In *Pitchess v. Superior Court*, 522 P.2d 305 (Cal. 1974), the California Supreme Court recognized that a criminal defendant may, in some circumstances, compel the discovery of evidence in the arresting law enforcement officer's personnel file that is relevant to the defendant's ability to defend against a criminal charge. In 1978, the California Legislature codified the privileges and procedures surrounding what had come to be known as a *Pitchess* motion through the enactment of California Penal Code §§ 832.7 and 832.8 and California Evidence Code §§ 1043 through 1045. *People v. Mooc*, 36 P.3d 21, 24 (Cal. 2001) (citations omitted).

motion, a defendant must establish that he was "committed without reasonable or probable cause." CAL. PENAL CODE § 995(a)(2)(B). In this case, Thurston and Baker's father reported to police that Baker pointed a gun at Thurston's head and threatened to kill him. Such evidence was sufficient to defeat a § 995 motion. *See Williams v. Superior Court*, 458 P.2d 987, 990 (Cal. 2000) ("An information will not be set aside or a prosecution thereon prohibited if there is some rational ground for assuming the possibility that an offense has been committed and the acused is guilty of it."). Baker asserts that a *Pitchess* motion was necessary because "several officers['] statements and reports were inconsistent with facts." Baker, however, provides no reason to believe that anything in the unnamed officers' personnel files would have supported his unfounded assertion that the officers fabricated evidence. As there is no showing that a § 995 or *Pitchess* motion would have been granted or would have had any effect on the proceedings, defense counsel did not perform deficiently by failing to file one. *See Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012) ("Counsel is not necessarily ineffective for failing to raise even a nonfrivolous claim, so clearly we cannot hold counsel ineffective for failing to raise a claim that is meritless." (internal citation omitted)); *see also Lockhart v. Fretwell*, 506 U.S. 364, 374 (1993) (O'Connor, J., concurring) (failing to raise a meritless objection cannot constitute prejudice under a Strickland ineffective assistance of counsel claim). Thus, Baker cannot show that his counsel's failure to file these requested motions warranted withdrawal of his plea either.

Baker also alleges that "Davis has a past record of misconduct" and a "history of being disbarred." In support of this assertion, Baker attaches to his Petition a printout from the California State Bar website noting that Davis was twice suspended from the California State Bar and stipulated to misconduct in seven matters in 2003. The fact that the State Bar

disciplined Davis for misconduct in other cases does not constitute per se ineffective assistance of counsel. *See United States v. Ross*, 338 F.3d 1054, 1056-57 (9th Cir. 2003) (per curiam) (attorney suspended from practice before start of defendant's trial is not per se ineffective); *United States v. Mouzin*, 785 F.2d 682, 696-97 (9th Cir. 1986) ( "[T]he fact that an attorney is suspended or disbarred does not, without more, rise to the constitutional significance of ineffective counsel under the Sixth Amendment."). Instead, Baker must show that Davis provided him with ineffective assistance of counsel during the plea proceedings, *see Young v. Runnels*, 435 F.3d 1038, 1042-43 (9th Cir. 2006) (*Strickland* applies where petitioner is represented by defense counsel who is later disbarred); *Ross*, 338 F.3d at 1056 ("To prove ineffective assistance, defendants [whose lawyers were suspended or disbarred] (like everyone else) had to identify 'actual errors and omissions by counsel that a conscientious advocate would not have made,' and show that they suffered prejudice from those errors." (quoting *Mouzin*, 785 F.2d at 696)), which, for the reasons discussed above, Baker has not done.

Furthermore, any allegation that counsel coerced him to take the plea agreement is belied by the plea colloquy record.[4] "Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (citing *Machibroda v. United States*,

---

[4] Despite Baker's citation in the plea agreement to *People v. West*, 477 P.2d 409 (Cal. 1970), whether the state trial court must find a factual basis for his no contest plea is not at issue here because Baker does not challenge the sufficiency of the factual basis of his plea. Moreover, the record indicates that, at his change of plea hearing, Baker stipulated that there was a factual basis for the plea and that the court could "discern a further factual basis from the probation report."

368 U.S. 487, 495-96 (1962)).  Before accepting Baker's plea, the trial court asked whether "anyone promised [him] or threatened [him] with anything to get [him] to enter into this plea other than the dismissal of than the dismissal of certain charges."  Baker answered in the negative.  Indeed, as the appellate court noted:

> Nor did [Baker] testify that any degree of perceived inadequate pretrial investigation "caused" him to accept the plea bargain, as he asserted in his motion to withdraw the plea.  Whatever the prosecutor's early criticisms of defense counsel, for example, [Baker] apparently did not credit them, because he thereafter decided to continue with Davis as his counsel.  Nor did [Baker] testify that Davis indicated he was not ready to go to trial or that he believed him then to be unprepared.  To the contrary, the evidence suggested the most persuasive factor in [Baker's] acceptance of the plea bargain might have been his father's advice that he accept it.  That his initial "reluctance" at accepting the plea bargain was overcome after he received his father's notes and his attorney's reassurance that "[i]t says right here, 18-year plea bargain" does not mean his free judgment was overcome, and certainly not as a result of counsel's incompetence.  Briefly, pleas entered with reluctance, or upon persuasion by counsel or family members, are not involuntarily made.

*Baker*, 2011 WL 3107071, at *6 (internal citations omitted).

Accordingly, the state courts' conclusion that Baker's plea was voluntarily, intelligently, and knowingly made and not the product of ineffective counsel does not contravene or unreasonably apply federal law.  Baker is therefore not entitled to relief on his claim that his counsel's deficient performance warranted withdrawal of his no contest plea.

Conflict of Interest (Claim 4)

Baker likewise asserts that Davis "had a conflict of interest which materially compr[o]mised the defense."  Baker presented this claim in his petition for a writ of habeas corpus to the state superior court.  That court relied on a procedural bar to reject the claim, citing California state law for the proposition that claims raised and resolved on appeal cannot be reconsidered by writ of habeas corpus.  Although federal courts "will not review a question of

15

federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment," *Coleman v. Thompson*, 501 U.S. 722, 729 (1991), procedural default does not preclude federal habeas review here because the last state court rendering judgment in this case—the California Supreme Court on habeas review—summarily denied the claim and thus did not "clearly and expressly" state that its judgment rested on a state procedural bar, *Teague v. Lane*, 489 U.S. 288, 298-99 (1989) (quoting *Harris v. Reed*, 489 U.S. 255, 263 (1989)).

Although Baker's claim is not barred from federal review, it nonetheless is without without merit. It is well established that the Sixth Amendment right to effective assistance of counsel carries with it "a correlative right to representation that is free from conflicts of interest." *Wood v. Georgia*, 450 U.S. 261, 271 (1981). To establish a Sixth Amendment violation based on a conflict of interest, a petitioner must show: (1) that his trial counsel actively represented conflicting interests, and (2) that an actual conflict of interest adversely affected his performance. *Mannhalt v. Reed*, 847 F.2d 576, 579-80 (9th Cir. 1988) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980)). "'[A]n actual conflict of interest' means precisely a conflict *that affected counsel's performance*—as opposed to a mere theoretical division of loyalties." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002).

Baker contends that Davis had a conflict of interest because: 1) "Mr. Davis stated that he had a conflict of interest;" 2) "Mr. Davis said there are no grounds for [Baker] to withdraw his plea;" and 3) Mr. Davis stated that witness's [sic] were being intimidated and that he himself had become a witness to some extent should [Baker] withdraw his plea." But none of these complaints come close to establishing that "counsel actively represented conflicting interests."

16

*Mannhalt*, 847 F.2d at 579-80. At most, they amount to disagreement over trial tactics. Furthermore, the statements attributed to Davis were all made before the Court of Appeal reversed the judgment and remanded to the trial court with instructions to permit Baker to discharge his attorney. Accordingly, Baker fails to establish that his Sixth Amendment right to conflict-free counsel was violated, and he is not entitled to relief on this claim.

        Judicial Bias (Claim 6)

Finally, Baker contends that judicial bias contributed to his conviction. The Due Process Clause guarantees a criminal defendant the right to a fair and impartial judge. *See In re Murchison*, 349 U.S. 133, 136 (1955). However, a petitioner claiming judicial bias must overcome a "presumption of honesty and integrity" on the part of the judge. *See Withrow v. Larkin*, 421 U.S. 35, 47 (1975). Moreover, a claim of judicial bias based on improper conduct by a state judge in the context of federal habeas review does not simply require that the federal court determine whether the state judge's conduct was improper; rather, the question is whether the state judge's conduct "rendered the trial so fundamentally unfair as to violate federal due process under the United States Constitution." *Duckett v. Godinez*, 67 F.3d 734, 740 (9th Cir. 1995) (citations omitted).

The thrust of Baker's claim is that the trial court's failure to allow him to discharge Davis and withdraw his no contest plea evinces bias against him. But as the Ninth Circuit has repeatedly recognized, adverse rulings alone are insufficient to demonstrate judicial bias. *See Larson v. Palmateer*, 515 F.3d 1057, 1067 (9th Cir. 2008); *Taylor v. Regents of the Univ. of Cal.*, 993 F.2d 710, 712-13 (9th Cir. 1993); *Davis v. Fendler*, 650 F.2d 1154, 1163 (9th Cir. 1981). This is true even where the rulings are erroneous. *Hasbrouck v. Texaco*, 842 F.2d 1034, 1046

17

(9th Cir. 1987); *United States v. Nelson*, 718 F.2d 315, 321 (9th Cir. 1983).  Thus, Baker's claim that the trial judge was biased as evidenced by his adverse rulings fails to set forth a violation of the due process clause.  *Liteky v. United States*, 510 U.S. 540, 556 (1994) ("All of these grounds are inadequate under the principles we have described above: They consist of judicial rulings, routine trial administration efforts, and ordinary admonishments (whether or not legally supportable) to counsel and to witnesses.  All occurred in the course of judicial proceedings, and neither (1) relied upon knowledge acquired outside such proceedings nor (2) displayed deep-seated and unequivocal antagonism that would render fair judgment impossible.").  Because none of the conduct about which Baker complains comes even close to approaching the standards required to show that he was denied a fair trial, Baker's judicial bias claim must fail.

## V. CONCLUSION AND ORDER

Baker is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: August 6, 2014.

          /s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge